CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 10 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHARON G. WINGATE, | ) | Civil Action No. 7:13cv00142 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| INSIGHT HEALTH CORP. *et al.*, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

Plaintiff Sharon G. Wingate, acting as the executor of her husband's estate, brought this action in the Circuit Court for the City of Roanoke against defendants Insight Health Corp. ("IHC"), two IHC physicians, and Image Guided Pain Management. Ms. Wingate's state-court complaint alleges that the defendants acted negligently, fraudulently, and in violation of the Virginia Consumer Protection Act by obtaining contaminated methylprednisolone acetate ("MPA"—an injectable steroid commonly used to treat swelling and pain) from the New England Compounding Center ("NECC") and administering it to her husband, causing him to develop a strain of fungal meningitis that proved fatal. Ms. Wingate's claims are similar to those that a number of plaintiffs have recently asserted in sixteen other state-court lawsuits against IHC. After more than three months of state-court proceedings, IHC removed this action (and the sixteen others like it) to federal court pursuant to 28 U.S.C. § 1334, based on the claims' purported relation to NECC's ongoing Chapter 11 bankruptcy in the District of Massachusetts. Ms. Wingate has filed a motion to remand this action to state court in which she argues that IHC's removal petition was untimely and jurisdictionally deficient. Failing that, Ms. Wingate argues, the court should abstain from exercising related-to jurisdiction, or should remand the action on equitable grounds. IHC's codefendants, Dr. John Mathis, Dr. Robert O'Brien, and

Image Guided Pain Management, have joined in Ms. Wingate's motion. The court assumes without deciding that it has related-to jurisdiction over this matter, but finds that IHC's notice of removal was untimely and remands the action on that basis. In the alternative, the court abstains from hearing this matter pursuant to the mandatory abstention provision that Congress included in 28 U.S.C. § 1334. Were that not enough, the court remands the action on equitable grounds pursuant to 28 U.S.C. § 1452(b). Accordingly, the court grants Ms. Wingate's motion to remand.

### I.

In an effort to alleviate his chronic shoulder pain, Ms. Wingate's husband consulted his family doctor, who in turn referred Mr. Wingate to IHC[1] for a steroid injection. There, a doctor gave Mr. Wingate an epidural injection of MPA. According to Ms. Wingate's complaint, that MPA was part of a large, non-sterile batch that NECC had manufactured in mid-2012. Over the next twelve days, Mr. Wingate suffered headaches, seizures, and a series of strokes that led to his death. The medical examiner reported that Mr. Wingate's cause of death was fungal meningitis.

On November 20, 2012, Ms. Wingate brought a diversity-based lawsuit against NECC in this court, asserting various negligence and products-liability theories. Other MPA-affected individuals (and the estates of those who had died from the contaminated MPA) also began bringing suit against NECC in various state and federal fora. Little more than a month later, NECC filed for bankruptcy in Massachusetts—an event that stayed, pursuant to 11 U.S.C. § 362, the plaintiffs' claims against NECC. Ms. Wingate then filed a December 27, 2012, complaint against IHC in the Circuit Court for the City of Roanoke, claiming medical negligence, negligence per se, gross negligence, fraud, and violations of the Virginia Consumer Protection Act. Other plaintiffs soon filed similar complaints against IHC. Ms. Wingate provided IHC's

---

[1] IHC was doing business as Insight Imaging-Roanoke.

counsel with a copy of her complaint on the same day she filed it, and she served IHC's registered agent eight days later. The state court scheduled the matter for a seven-day jury trial to begin on April 21, 2014. IHC filed a demurrer to the complaint (which the parties argued in February), the parties engaged in discovery, and Ms. Wingate moved for partial summary judgment. The state court set that motion for an April 5, 2013, hearing.

Meanwhile, the Judicial Panel on Multidistrict Litigation ("MDL Panel") began consolidating the various lawsuits against NECC. The MDL Panel consolidated the first of those lawsuits on February 12, 2013, in the United States District Court for the District of Massachusetts. On March 10th, the Chapter 11 Bankruptcy Trustee in the ongoing NECC bankruptcy proceeding filed a motion to transfer more than fifty personal-injury and wrongful-death cases to the multidistrict litigation pursuant to 28 U.S.C. §§ 157(b)(5) and 1334. The Bankruptcy Trustee took the position that a number of those cases (including this one) were "related to" NECC's bankruptcy, even though the complaints named no debtor parties.

Back in state court, IHC took that development as an opportunity to remove Ms. Wingate's claims to federal court. On the April 5th morning of oral argument on Ms. Wingate's pending summary judgment motion, IHC's counsel appeared in state court and informed the judge that IHC had removed the matter. The same day, the state judge entered partial summary judgment in ten similar cases against IHC, but IHC's counsel began removing those cases to federal court as well. Altogether, IHC has removed seventeen cases that assert nearly identical claims. Ms. Wingate has moved this court to remand the action or abstain from exercising jurisdiction in this case, and the other plaintiffs have followed suit. IHC has responded, the court has heard oral argument, and the matter is ripe for decision.

## II.

As an initial matter, the court assumes without deciding that it has related-to jurisdiction over Ms. Wingate's claims. Section 1334 of Title 28 establishes subject matter jurisdiction in the United States District Courts for all cases "under title 11," and extends it as well to "all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(a)–(b). In the Fourth Circuit, "'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 836 (4th Cir. 2007) (emphasis removed) (quoting In re Celotex Corp., 124 F.3d 619, 625 (4th Cir. 1997)). There is conflicting authority, however, on the question of whether a state-law cause of action between non-debtors passes that test. On one hand, the Third Circuit has held that "there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings." In re W.R. Grace & Co., 591 F.3d 164, 172 (3d Cir. 2009). On the other hand, the Sixth Circuit has held that a non-debtor defendant's potential but as-yet unasserted claim against a bankruptcy estate was sufficient to establish related-to jurisdiction. See In re Dow Corning Corp., 86 F.3d 482, 494 (6th Cir. 1996).

Though the court is mindful that "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else,'" Matter of FedPak Sys., Inc., 80 F.3d 207, 214 (7th Cir. 1996) (quoting Gerald T. Dunne, The Bottomless Pit of Bankruptcy Jurisdiction, 112 Banking L.J. 957, 957 (Nov.–Dec. 1995)), the court is also mindful that it need not resolve the question here. If the court has related-to jurisdiction, it nevertheless abstains from exercising it and remands the action to state

court on procedural and equitable grounds. And if the court lacks related-to jurisdiction, the remand is equally justified.

### III.

In its notice of removal, IHC asserted that this action became removable under 28 U.S.C. § 1446(b)(3) on March 10, 2013, when the NECC Bankruptcy Trustee filed his motion to transfer and asserted related-to jurisdiction over Ms. Wingate's claims. According to IHC, that motion "constituted such 'other paper from which it may first be ascertained that the case is one which is or has become removable.'" Notice 4, ECF No. 1 (quoting § 1446(b)(3)). From the outset, Ms. Wingate has argued that IHC's notice of removal was untimely because IHC's removal window was not measured by the "other paper" provision in § 1446(b)(3), but by Federal Rule of Bankruptcy Procedure 9027(a)(3), which provides that the removal notice is due within thirty days of receiving the complaint. At oral argument on Ms. Wingate's motion to remand, IHC conceded that "on further study" Rule 9027 indeed governed, rendering its removal notice untimely. Nevertheless, IHC argued that the court should overlook its untimely notice because Ms. Wingate had waived any objections to the procedural defect in removal. The court rejects that argument and remands the action as untimely removed.

Section 1452 of Title 28 provides that "a party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of [Title 28]." Federal Rule of Bankruptcy Procedure 9027 describes the timing of the removal notice:

> If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons.

5

Fed. R. Bankr. P. 9027(a)(3); see also In re Celotex Corp., 124 F.3d at 629 (noting that the Bankruptcy Rules apply to cases grounded on related-to jurisdiction).

Here, Ms. Wingate filed her state-court action on December 27, 2012, and IHC's counsel received a copy of the complaint "through service or otherwise" on the same day.[2] Consequently, IHC's April 4, 2013, removal notice was more than two months late. Despite that patent untimeliness, IHC argues that Ms. Wingate waived any objection to the removal's procedural defects by (1) invoking federal jurisdiction in her November 2012 lawsuit *against NECC*, and (2) engaging in limited discovery after IHC removed this action. The first argument is wholly frivolous. As to the second argument, it is indeed true that a plaintiff may waive her right to object to the timeliness of removal through her "affirmative activity in federal court." In re Mutual Funds Inv. Litig., 767 F. Supp. 2d 542, 546 (D. Md. 2011) (citing Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203–04 (4th Cir. 2006)). In the Fourth Circuit, however, "diligent objection [to removal] renders the waiver doctrine inapplicable." King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003); see also Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74 (1996) (noting that that the plaintiff, "by timely moving for remand, did all that was required to preserve his objection to removal."). Here, Ms. Wingate filed her motion to remand, a brief in support, and nearly a dozen exhibits a mere eleven days after removal, and she has done little in this court but press the matter since that time. The court therefore finds that Ms. Wingate did not waive her right to object to IHC's untimely removal notice and, accordingly, remands the action to state court as untimely removed.

---

[2] Ms. Wingate's counsel has filed a sworn affidavit and a copy of the e-mail to IHC's counsel, both of which indicate that IHC received a copy of the complaint on December 27, 2012. See Aff. 2, ECF No. 10-1.

## IV.

Ms. Wingate argues that the court must abstain from exercising jurisdiction over this matter pursuant to the mandatory abstention provision that Congress included in 28 U.S.C. § 1334, the very code section that provides federal courts with related-to jurisdiction. IHC contends that the mandatory abstention provision does not actually apply to tort claims like Ms. Wingate's. The court rejects that premise, agrees with Ms. Wingate, and grants her motion to abstain.

Section 1334 establishes federal courts' related-to jurisdiction, but also mandates that "upon timely motion" the district court abstain from entertaining a case grounded only on "related to" jurisdiction if "an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." § 1334(c)(2); see also In re Celotex Corp., 124 F.3d at 627 n.4. A plain reading of that rule reveals six elements: (1) a party must file a timely motion to abstain; (2) the proceeding must be based on state-law claims; (3) the proceeding must be grounded on related-to jurisdiction; (4) there must not be any basis for federal court jurisdiction other than § 1334; (5) a parallel action must have been commenced in state court; and (6) the state-court action can be timely adjudicated. See § 1334(c)(2); In re Butterfield, 339 B.R. 366, 373 (E.D. Va. 2004).

This action satisfies all six of those elements. Ms. Wingate filed a motion to abstain less than two weeks after IHC removed; the proceeding is based on state-law negligence, fraud, and Virginia Consumer Protection Act claims; the only basis for federal court jurisdiction is § 1334(b)'s "related to" provision; Ms. Wingate commenced her state-court action several months ago; and the state court has set the matter for an April 21, 2014, jury trial and has even "advised the parties that it would be reluctant to grant any continuance." Aff. 2, ECF No. 10-1.

IHC argues that § 1334's mandatory abstention provision does not apply. Generally, IHC contends that § 1334(c)(2)'s mandatory abstention provision is not applicable to personal-injury or wrongful-death claims. Cf. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1010 n.14 (4th Cir. 1986) (quoting Walter J. Taggart, The New Bankruptcy Court System, 59 Am. Bankr. L.J. 231, 253 (1985)). Specifically, IHC points to 28 U.S.C. § 157(b)(4), which provides that "non-core proceedings under section 157(b)(2)(B) . . . shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." Section 157(b)(2)(B), in turn, defines those "non-core proceedings" as "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." There is an obvious problem with IHC's argument, however: Ms. Wingate's claims are not "against the estate" of NECC—they are against IHC and other non-debtors. Thus, on its face, § 157's abstention-exception is inapplicable. See, e.g., Nase v. TECO Energy, Inc., No. 09-7659, 2010 WL 924290, at *4 n.7 (E.D. La. March 9, 2010) ("Section 157(b)(4) has no application in this case because [the plaintiff's] personal injury tort claim is not 'against' his estate.").[3]

"[I]t is a far step" indeed to find "that a claim against a non-debtor is actually a claim directly against the estate for the purposes of section 157(b)(2)(B)." In re Federal-Mogul Global, Inc., 282 B.R. 301, 313 (D. Del. 2002). And the cases IHC cites in support of extending § 157's personal-injury-and-wrongful-death exception to a non-debtor's claim—Abbatiello v. Monsanto, No. 1:06cv266, 2007 WL 747804 (S.D.N.Y. March 8, 2007) and Berry v. Pharmacia Corp., 316 B.R. 883, 889 (S.D. Miss. 2004)—are unpersuasive. In both of those cases the court extended the exception to a non-debtor third party because the debtor and the third party had negotiated an indemnification agreement. See Abbatiello, 2007 WL 747804, at *2; Berry, 316 B.R. at 886. In

---

[3] The court notes that the Fourth Circuit's statement in A.H. Robins Co. v. Piccinin ("[m]andatory abstention under section 1334(c)(2) is not applicable to personal injury claims") was a general explanatory statement. There is no indication that the A.H. Robins court intended to lay down a broad rule.

8

fact, those two cases involved *the very same trio of defendants*: Monsanto Co.; Pharmacia Corp.; and Solutia, Inc. Those three defendants were "corporations formed from portions of Old Monsanto by a series of divisions and mergers." Abbatiello, 2007 WL 747804, at *1. The Berry court summarized the decisions' rationale:

> [G]iven the nature of the relationship and degree of identity between the debtor [and the third party], the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [the third party]. [A] judgment against [the third party] is, in practical effect, a judgment against [the debtor].

Berry, 316 B.R. at 889. No such indemnification agreement or entity-nexus exists in this case; a judgment against one or more of the third parties is not in practical effect a judgment against NECC. Consequently, the court abides by the plain language of the statute, finds that Ms. Wingate's claims are not "against the estate" and therefore not subject to § 157's abstention-exception, and grants Ms. Wingate's motion for mandatory abstention.

## V.

Finally, Ms. Wingate argues that the court should remand this action on equitable grounds. The court agrees and remands the action on that alternative basis.

Section 1452, which provides for the removal of claims related to bankruptcy cases, also gives the court discretion to "remand such claim or cause of action on any equitable ground." § 1452(b). Here, a number of equitable considerations urge remand. First, this action proceeded in state court for more than three months before IHC removed it. Both sides had filed motions and argued them, the parties had engaged in discovery, and the state court had set the matter for trial. IHC's removal notice—which was clearly untimely and stood on dubious jurisdictional footing—put the brakes on those fast-evolving proceedings and essentially halted litigation on the merits. Second, and by the same token, the state court has invested substantial time and other

resources into this matter. Third, this matter involves potentially thorny questions of state law and no discernible questions of federal law, bankruptcy or otherwise. And fourth, of the five named parties (one plaintiff and four defendants), four seek remand. Though the rules governing bankruptcy removal do not require unanimity, see In re Asbestos Litig., 271 B.R. 118, 120 n.2 (S.D.W. Va. 2001), the circumstances present here do not suggest a need to detain five parties at the behest of one. Accordingly, the court grants Ms. Wingate's motion to remand on equitable grounds.

## VI.

For the reasons stated, the court grants Ms. Wingate's motion and remands this action to state court.

**ENTER:** May 10, 2013.

_____
UNITED STATES DISTRICT JUDGE